AB:PP

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -

JASON SETO,

               Defendant.

- - - - - - - - - - - - X

COMPLAINT

(T. 18, U.S.C., § 2422(b))

19-MJ-795

EASTERN DISTRICT OF NEW YORK, SS:

      DAMON GERGAR, being duly sworn, deposes and states that he is a Detective with the New York City Police Department and Task Force Officer with the Border Enforcement Security Task Force with the Department of Homeland Security, duly appointed according to law and acting as such.

      In or about August 21, 2019 through September 5, 2019, within the Eastern District of New York and elsewhere, the defendant JASON SETO did, using the mail or a facility or means of interstate commerce, knowingly attempt to persuade, induce, entice, or coerce any individual who has not attained the age of 18 years to engage in any sexual activity for which any person can be charged with a criminal offense.

      (Title 18, United States Code, Section 2422(b)).

      The source of your deponent's information and the grounds for her belief are as follows[1]:

---

[1] Because the purpose of this Complaint is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I

1.  I am a detective employed by the New York Police Department and I have been a police officer for 19 years. I have been a detective for over 10 years, including being assigned to the Vice Major Case Squad for approximately 8 years and a Task Force Officer for 2 years with Border Enforcement Security Task Force with the Department of Homeland Security. My responsibilities include investigations of cases involving the promotion of a sexual performance by a child through the use of electronic devices and the internet, possession and distribution of child pornography through the use of electronic devices and the internet, as well as dissemination of indecent material to minors, and other incidents of the exploitation of children on the internet. I have gained expertise in this area through training in classes and daily work related to conducting these types of investigations. As part of my responsibilities, I have been involved in the investigation of numerous child pornography and child exploitation cases.

2.  I have personally participated in the investigation of the offenses discussed below. I am familiar with the facts and circumstances of this investigation from: my personal participation in the investigation, my review of documents, my training and experience, and discussions I have had with other law enforcement personnel. Additionally, statements attributable to individuals herein are set forth in sum and substance and in part.

3.  On or about August 21, 2019, I began working in an undercover capacity via an Internet-connected smartphone to conduct an investigation into individuals attempting to have sex with underage boys. I initially was contacted by an individual, who I later determined was the defendant, JASON SETO, on a dating application which individuals

---

am aware.

3

primarily use to meet up to have sexual contact. The defendant sent me a picture of himself, which included his face, as well as a picture of his penis. Within approximately 15 minutes of talking to the defendant, I told him I was 14 years old. The defendant responded "cool," and continued talking to me. The defendant asked if I liked "older." The defendant said he was my "daddy" and that I was "[his] son." The defendant asked if I like giving and receiving oral sex. Also on that day, the defendant asked if I was free to meet up.

4.   The defendant JASON SETO requested that we continue the conversation on Telegram, an encrypted chat application, which we did. Once on the Telegram application, he said it was "better to chat on here." Later the defendant stated "We have to both delete the convos each time this app is super private and that's why I suggested . . . . u get it. It's encrypted."

5.   The defendant JASON SETO also asked "so can u keep us a secret," and when I responded I said I could, he said "cool ... I have to ask to make sure ur down." He then said that he wanted to give me oral sex, kiss me, and "can't wait until u suk me ... u gonna like daddy's dick." Conversations of this nature between myself and the defendant continued repeatedly, even after I again said that I was 14 years old. At one point shortly after saying that I was 14, the defendant responded "I like young." The defendant also said "I want ur boy dick." When I responded "I'm not 5. I'm 14," the defendant responded "I like . . . perfect age."

6.   The defendant JASON SETO repeatedly expressed interest in meeting up with me. When I asked what he wanted to do when we meet up, he responded, "Get to know, kiss and suk dick." The defendant later said he wanted to engage in intercourse with

4

me. The defendant repeatedly discussed what sexual acts he would do with me when we met up. For example, on another occasion, the defendant stated "I want to stand up and have u on ur knees sucking me while u call me daddy." As another example, the defendant said "I want u to get naked and sit back and let me suk u. Yeah I want to please until u cum."

7. The defendant JASON SETO also requested that I send nude photos of myself. When I hesitated, the defendant replied "I'm not asking u to send ur face in it and honestly I been giving u my trust and I deserve some back." At one point, the defendant referred to the fact that I had already seen his penis.

8. The defendant JASON SETO discussed how he wanted us to watch child pornography when we met up. The defendant said he watched liking pornography of boys "younger" than me, i.e., younger than 14 years old. The defendant sent me four videos during the course of our conversations. Although the ages of the individuals in the video are not clear, based on my training and experience, it appears that at least one of the videos may be of an underage boy. During the course of our conversations, the defendant said he wanted to watch these types of videos with me.

9. Law enforcement officials determined, using the photograph of the defendant JASON SETO's face that he sent me and comparing it with known photographs of the defendant, that the photograph the defendant sent me was of a JASON SETO. In addition, during our conversations, the defendant used the alias "Carlos Sanchez" as his username. Eventually I asked if Carlos was his real name, and the defendant replied, "Jason Carlos."

10. When talking on the dating application, the defendant JASON SETO sent me the GPS coordinates of where he was located in Queens, NY. The coordinates were less than .4 miles from the defendant's home address, in Astoria in Queens. In addition, when I told the defendant I was near LaGuardia Airport, he said "ur super close to me . . ." The defendant's address is approximately 2.5 miles from LaGuardia Airport.

11. The defendant JASON SETO repeatedly asked when we could meet up. For example, on August 23, 2019, he said "so can we chill next week what u think?" When asked what he would want to do when we met up, he said "Get to know, kiss and suk dick." On August 24, 2019, he wrote "What is really important to me is that me seeing u make time for us next week so we can see each other." At one point, when I said that I usually resided in the Dominican Republic, the defendant offered to fly down there to see me. On September 5, after two weeks of discussing the sexual acts he wanted to do with me, and just one day earlier saying to me "I want to suck u and be sucked," the defendant and I discussed where we could meet up the next day. I asked if we could meet at the Five Guys at LaGuardia Airport. The defendant stated after we met "we can head back to my place." We eventually planned to meet at approximately 6:00 p.m. At 5:36 p.m., the defendant texted me that he could meet up in thirty minutes or less.

12. On September 5, 2019, at approximately 5:50 p.m., law enforcement officers observed the defendant JASON SETO leaving his residence in Astoria. At approximately 6:07 p.m., law enforcement officers observed the defendant arrive at LaGuardia Airport. The defendant messaged me asking where I was, and I said I was in the bathroom. Law enforcement officers then observed the defendant go to the bathrooms at

LaGuardia Airport. I then messaged the defendant that I was at the Five Guys, the restaurant where we originally planned to meet. Law enforcement officers then observed the defendant go to the Five Guys. When he entered the Five Guys, I and other law enforcement officers placed the defendant under arrest.

13. After his arrest, I read the defendant JASON SETO his Miranda rights, which he waived, and he signed a Miranda waiver form. The defendant then admitted that he was the one talking to an individual who said he was 14 years old.

14. During his Mirandized post-arrest interview, the defendant JASON SETO gave me consent to search the phone in his possession for the chats with the individual he believed to be 14 years old. The defendant's phone contained the chats that I had with him on the Telegram application where he attempted to entice me, posing a 14-year-old boy, to have sex.

WHEREFORE, your deponent respectfully requests that the defendant JASON SETO be dealt with according to law.

_____
DAMON GERGAR
Task Force Officer
United States Department of Homeland Security,
Homeland Security Investigations

Sworn to before me this
6th day of September, 2019

_____
THE HONORABLE ROANNE L. MANN
CHIEF UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK