

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

AB:PP                                    *271 Cadman Plaza East*
F. #2019R01208                           *Brooklyn, New York 11201*

                                         September 11, 2019

<u>By Hand and ECF</u>

Honorable Lois Bloom
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

        Re:    United States v. Jason Seto
              <u>19-MJ-795</u>

Dear Judge Bloom:

        The government respectfully submits this letter to request a permanent order of detention with respect to the defendant Jason Seto.  As further described below, the defendant poses a significant danger to the community and is a flight risk.

I.  <u>Legal Standard</u>

        The defendant is charged by complaint with attempted coercion and enticement of a minor to have sex, in violation of Title 18, United States Code, Section 2422(b). This charge carries a statutory presumption under 18 U.S.C. § 3142(e)(3) that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." <u>See</u> 18 U.S.C. § 3142(e)(3)(E) (presumption for offenses involving minor victims under 18 U.S.C. §§ 2422).

        To rebut this statutory presumption, the defendant must come "forward with evidence that he does not pose a danger to the community or a risk of flight." <u>United States v. Mercedes</u>, 254 F.3d 433, 436 (2d Cir. 2001) (per curiam).  If this limited burden of production is satisfied, the government retains the burden of persuasion by clear and convincing evidence that the defendant presents a danger to the community and by a preponderance of evidence that the defendant presents a risk of flight.  <u>Id.</u>

        To determine whether the presumptions of dangerousness and flight are rebutted by a defendant, the Court must consider:

        (1)     the nature and circumstances of the crime charged;
        (2)     the weight of the evidence against the defendant;

> (3)    the history and characteristics of the defendant, including family ties, employment, financial resources, community ties, drug or alcohol abuse history and past conduct; and
>
> (4)    the nature and seriousness of the danger to the community or to an individual that would be posed by release.

18 U.S.C. § 3142(g).  Once a defendant has met his burden of production relating to danger to the community and risk of flight, the presumption in favor of detention does not disappear entirely but remains a factor for the court to consider.  Mercedes, 254 F.3d at 436.

## II.   The Defendant Is a Danger to the Community and Presents a Serious Risk of Flight

The defendant, a 41-year-old New York City resident who is employed by the United Federation of Teachers and who works at a public school in the Bronx as a community school director, is charged with attempting to coerce and entice a minor to have sex.  On or about August 21, 2019, the defendant contacted a law enforcement officer working in an undercover capacity on a dating application primarily used by individuals who meet up to have sexual contact.  The defendant sent the officer a picture of himself, which included his face, as well as a picture of his penis.  Within approximately 15 minutes of talking to the defendant, the officer told the defendant he was 14 years old.  The defendant responded "cool," and continued talking to the officer.  The defendant asked if the officer if liked "older."  The defendant asked if the officer, again pretending to be a 14-year-old boy, liked giving and receiving oral sex.  Also on that day, the defendant asked if the undercover officer was free to meet up.

The defendant requested that the parties' continue the conversation on Telegram, an encrypted chat application.  Once on the Telegram application, the defendant said to the officer it was "better to chat on here."  Later the defendant stated "We have to both delete the convos each time this app is super private and that's why I suggested . . . . u get it.  It's encrypted."

The defendant also asked "so can u keep us a secret," and when the officer responded he could, the defendant said "cool … I have to ask to make sure ur down."  He then said that he wanted to give the supposed 14 year old oral sex, kiss him, and said "can't wait until u suk me … u gonna like daddy's dick."  Conversations of this nature between the officer and the defendant continued repeatedly, even after the officer again said that he was 14 years old.  At one point shortly after the officer said he was 14, the defendant responded "I like young."  The defendant also said "I want ur boy dick."  When the officer responded "I'm not 5.  I'm 14," the defendant responded "I like . . . perfect age."

The defendant repeatedly expressed interest in meeting up.  When asked what he wanted to do after they met, the defendant responded, "Get to know, kiss and suk dick."  The defendant later said he wanted to engage in intercourse with the officer.  (At another point during the conversations, the defendant told the supposed 14-year-old that sex is better without a condom.)  The defendant repeatedly discussed what sexual acts he would do after

meeting up.  For example, on another occasion, the defendant stated "I want to stand up and have u on ur knees sucking me while u call me daddy."  As another example, the defendant said "I want u to get naked and sit back and let me suk u.  Yeah I want to please until u cum."

The defendant also requested that the individual he believed to be 14 years old send nude photos of himself.  When the officer hesitated, the defendant replied "I'm not asking u to send ur face in it and honestly I been giving u my trust and I deserve some back." At one point, the defendant referred to the fact that the officer had already seen his penis.  As part of the grooming process, the defendant shared supposed secrets about his life and discussed how he and the 14 year old had a connection.

The defendant also discussed how he wanted to watch child pornography with the individual he believed to be 14.  The defendant said he watched liking pornography of boys "younger" than the officer, i.e., younger than 14 years old.  The defendant sent the officer four videos during the course of their conversations.  Although the ages of the individuals in the video are not clear, based on the officer's training and experience, it appears that at least one of the videos may be of an underage boy.  These videos were then found on the defendant's phone that he had on him when he was arrested.  As discussed below, subsequent investigation has revealed that the defendant admitted to possessing child pornography.

On September 4, 2019, after two weeks of discussing the sexual acts he wanted to do with the officer, and just one day earlier saying "I want to suck u and be sucked," the defendant and the officer discussed where they could meet up the next day.  The officer asked if they could meet at the Five Guys at LaGuardia Airport.  The defendant stated after they met "we can head back to my place."

On September 5, law enforcement officers observed the defendant arrive at LaGuardia Airport.  The defendant messaged the officer asking where he was, and the officer said he was in the bathroom.  Law enforcement officers then observed the defendant go to the bathrooms at LaGuardia Airport.  The officer then messaged the defendant that he was at the Five Guys, the restaurant where they originally planned to meet.  Law enforcement officers then observed the defendant go to the Five Guys.  When he entered the Five Guys, law enforcement officers placed the defendant under arrest.

After his arrest, the defendant was read his Miranda rights, which he waived, and he signed a Miranda waiver form.  The defendant then admitted that he was the one talking to an individual who said he was 14 years old.

During his Mirandized post-arrest interview, the defendant gave consent to search the phone in his possession for the chats with the individual he believed to be 14 years old.  The defendant's phone contained the Telegram chats with the officer.  In addition, at the time of his arrest, the defendant was carrying with him beer in a thermos.  (The defendant had previously, on at least one occasion during the chats with the officer, discussed how they could drink alcohol when they met up.)

After the defendant was arrested, the Honorable Roanne L. Mann authorized a search warrant for the defendant's cell phone. Although a full forensic review of the phone has not been completed, law enforcement officers have found at least one conversation with someone other than the officer, where the defendant discussed sharing child pornography and stating that he keeps child pornography on a flash drive.

In addition, the defendant is a danger to the community not only because of his attempt to coerce a minor to have sex, but also because of his admission of sexually assaulting an 18-year-old. In a July 2019 instant message conversation that law enforcement located on the defendant's cell phone, the defendant told another individual that a few weeks prior to the conversation he brought someone he knows, who the defendant claimed was 18, back to his apartment and who was "so fucked up" that the defendant "had to carry him up," "help[] him change," and "washed him" and that the individual then slept in the defendant's bed naked and "didn't remember." The defendant stated he then performed oral sex on this individual, anally penetrated him with his finger, and then ejaculated on his face.

The nature and circumstances of the charged crime and the weight of the evidence strongly support detention. The defendant is charged with one of the most serious federal crimes involving the sexual exploitation of children. The defendant is a community school director at a public school in the Bronx, and previously worked in a similar capacity in another public school. He has repeatedly sought employment where he could work around children.

The evidence in this case is overwhelming. It includes material obtained from the defendant's own cell phone, which unequivocally establishes that the defendant was the one who attempted to coerce and entice someone who he believed a 14-year-old boy to have sex. The defendant also admitted in his post-arrest interview that he was the one having the conversations with this individual. And the conversations, only some of which are set forth herein and in the criminal complaint, show that the defendant was attempting to groom this 14-year-old by sharing supposed secrets about himself, attempting to build trust, and repeatedly discussing the sexual acts they would do when they met up. The defendant repeatedly and forcefully attempted to set up meetings with the undercover officer. In fact, on one occasion, when the officer said he usually lives in the Dominican Republic, the defendant suggested that he would fly there to meet him. And, when they did plan a meet, the defendant said they would go back to his residence. The defendant repeatedly described in explicit detail the sexual acts he and the boy would do when they met up, including the defendant standing up while a 14-year-old was on his knees performing oral sex on the 41-year-old defendant and calling the defendant "daddy." The defendant even brought alcohol to this meeting with the apparent 14-year-old boy. When he got to the meeting spot and the individual, who he believed to be just 14 years old said he was in the bathroom, the defendant went into the bathrooms at LaGuardia to find him. Fortunately, the defendant was actually talking to an undercover officer, and did not have the opportunity to sexually abuse a young boy.

The nature of the charged offense and the circumstances discussed above demonstrate why the defendant is a danger to the community if released.  The defendant preyed on what he believed to be a 14-year-old boy, attempting to sexually abuse a minor.  There are few crimes that pose more of a danger to society.  The defendant's conversations with the undercover officer discussed above and in the complaint, combined with (a) the defendant bringing's alcohol to the meet; (b) the defendant's going into the bathroom to try and find what he believed was a 14-year-old; and (c) evidence already found to date that the defendant was trading child pornography and stating that he sexually assaulted an 18-year-old demonstrate that the defendant is a sexual predator who should be detained pending trial.

The defendant poses a risk of flight if released.  The offense with which the defendant is charged, attempted enticement or inducement of a minor to have sex, carries a statutory mandatory minimum of ten years' imprisonment and a statutory maximum of life imprisonment.  18 U.S.C. § 2422(b).  The Second Circuit has held that the possibility of a severe sentence is an important factor in assessing flight risk.  See United States v. Jackson, 823 F.2d 4, 7 (2d Cir. 1987); United States v. Cisneros, 328 F.3d 610, 618 (10th Cir. 2003) (seriousness of the charges against defendant weigh in favor of detention).

III. Conclusion

For the reasons set forth above, the defendant poses a significant danger to the community if released pending trial, and no combination of bail conditions will ensure the safety of the community and the defendant's continued appearance before the Court.

Respectfully submitted,

RICHARD P. DONOGHUE
United States Attorney

By:    /s/    Philip Pilmar
Philip Pilmar
Assistant U.S. Attorney
(718) 254-6106

cc:    James Branden, Esq. (by E-mail and ECF)
Clerk of Court (by ECF)